UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

MELISSA S.[1], )
 )
    Plaintiff, )
 )
v. ) CIVIL NO. 2:21cv358
 )
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security, )
 )
    Defendant. )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant has not engaged in substantial gainful activity since November 3, 2019, the application date (20 CFR 416.971 *et seq*.).

2

2. The claimant has the following severe impairments: depression and cyclothymic disorder, panic disorder, attention deficit hyperactivity (ADHD), and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant can carry out simple tasks with simple work-related decisions and judgments performing these tasks with adequate pace, persistence and concentration in two-hour segments allowing for normal breaks; she must work in a low stress environment defined as work with no assembly lines and no hourly quotas, but can meet end-of-day expectations; she can tolerate occasional interaction with supervisors and coworkers, but can have no interaction with the general public as part of the job duties; and she can tolerate changes in a routine work setting consistent with simple work.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 11, 1999 and was 19 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 3, 2019, the date the application was filed through the date of this decision (20 CFR 416.920(g)).

(Tr. 70-83).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits,

leading to the present appeal.

Plaintiff filed her opening brief on May 4, 2022. On August 12, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on September 7, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff suffers from severe depression and cyclothymic disorder, panic disorder, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (Tr. 70.) Plaintiff's therapist Johannah Ramaker, MA, LMHC, opined in December 2020 that Plaintiff had marked limitations in maintaining concentration and attention for extended periods,

performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, asking simple questions or requesting assistance, maintaining socially appropriate behavior and adhering to basic neatness and cleanliness standards, and traveling to unfamiliar places or using public transportation. (Tr. 431-432.) Plaintiff received treatment twice weekly since December 2017 and her disorders impacted her capability to sustain employment. She experienced multiple job losses and employment changes due to mental health issues and reported an inability to perform work duties. (Tr. 433.) She experienced mood irregularities ranging from panic episodes to depressive symptomatology; she struggled with maintaining routine and presenting herself appropriately to others; her hygiene was impaired during depressive episodes and social interactions were challenging as they heightened her anxiety response. (Tr. 433-34.) Ms. Ramaker and Trinity Counseling Resources also authored a letter in March 2021 that reiterated the extent of Plaintiff's functional restrictions. (Tr. 1030.)

    In June 2020, non-examining State agency reviewing psychologist Patricia G. Garcia, Ph.D., opined that Plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective medical evidence alone. (Tr. 58.) Plaintiff had moderate limitations in working in coordination with or in proximity to others without being distracted by them; interacting appropriately with the general public; and

responding appropriately to changes in the work setting. (Tr. 58-60.) She could perform detailed tasks, attend to them for a sufficient period, and manage work stress involved in detailed work tasks. (Tr. 60.) She could relate on a superficial and ongoing basis with co-workers and supervisors. (Tr. 60.) At the reconsideration level, J. Gange, Ph.D., also opined that Plaintiff's statements concerning her symptoms were substantiated by the objective medical evidence alone. (Tr. 45.) Dr. Gange affirmed Dr. Garcia's opinion as to relating on a superficial and ongoing basis with co-workers and supervisors. (Tr. 49.)

In support of remand, Plaintiff first argues that the ALJ erred in his evaluation of the opinion evidence. The ALJ found treating therapist Ms. Ramaker's opinion not persuasive, as being inconsistent with and not supported by the record. (Tr. 77, 431-34.) The ALJ held that the opinion was inconsistent with Ms. Ramaker's treatment notes, which showed that while Plaintiff was depressed and anxious at times, her mental status examinations were generally unremarkable and did not show more than mild to moderate limitations. (Tr. 77.)

20 C.F.R. Sec. 416.920c states that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency. We will articulate how we considered the medical opinions and prior administrative findings in your claim." The Agency may also consider factors such as the doctor's relationship with the claimant and the doctor's specialization. *See* 20 C.F.R. Sec. 416.920c(c)(1-5). Plaintiff argues that the ALJ erred by mischaracterizing the evidence in assessing Ms. Ramaker's opinion.

The ALJ found that while Ms. Ramaker's treatment notes reflected that Plaintiff was depressed and anxious at times, her mental status examinations were generally unremarkable

and did not show more than mild to moderate limitations. Plaintiff points out that this conclusion was perfunctory and relied upon citations to entire exhibits. (Tr. 77.) The record contains hundred of pages of therapy notes from Ms. Ramaker; Exhibit 11F alone was 581 pages. Plaintiff argues that it is not possible to trace the path of the ALJ's reasoning due to the ALJ's vagueness. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must sufficiently trace the path of his or her reasoning such that a Court can engage in meaningful appellate review).

Clearly, Ms. Ramaker's notes did not simply reflect that Plaintiff only suffered from anxiety and depression. (Tr 77.) The ALJ mischaracterized the notes, which show other, extensive, abnormal findings. Those findings include observations by Ms. Ramaker of disorganized cognitive functioning (Tr. 820, 984), exhausted mood (Tr. 834, 976), flat mood and affect (Tr. 510, 536, 874), preoccupied cognitive functioning (Tr. 810, 877, 1004), anxious and irritable presentation (Tr. 877), impaired functional status (Tr. 634, 918), constricted affect (Tr. 984), grandiose mood and symptoms consistent with depersonalization and paranoia (Tr. 612, 1000, 1006), irritable mood (Tr. 1004), intermittently interactive interpersonal interaction (Tr. 634, 1012, 1018), rapid speech, (Tr. 644), and fatigue (Tr. 655.) Plaintiff also consistently reported panic attacks to Ms. Ramaker. (Tr. 570, 658, 810.) In March 2020 Plaintiff presented to Ms. Ramaker in a panic as she quit her job because of her mental health symptoms; she had a nonstop panic attack before her shift and then had one while at work, and she then quit. (Tr. 810.) Plaintiff explained that her panic attacks made her exhausted and tired and left her exhausted for the rest of the day. (Tr. 867.) She also reported multiple panic attacks and an inability to go into a store due to overwhelming thoughts. (Tr. 912-13.) In January 2021 Plaintiff was anxious about her first two-hour shift at Taco Bell. (Tr. 985.) She then reported being very anxious and

panicking during that shift. (Tr. 989.) These extensive records do not suggest that Plaintiff was simply anxious and depressed as the ALJ held in the decision. (Tr. 77.) Rather, the records show that Plaintiff exhibited a range of severe observable symptoms upon Ms. Ramaker's examinations and also reported debilitating panic symptoms. Clearly, the ALJ mischaracterized and selectively cited the record, and erred by failing to address all of the relevant evidence.

The ALJ also opined that Plaintiff's mental status examinations performed by Ms. Ramaker were generally unremarkable and did not show more than mild-to-moderate limitations. (Tr. 77.) However, had the ALJ evaluated Plaintiff's disorganized cognitive functioning, constricted affect, grandiose mood, panic attacks, and impaired functional status as observed by Ms. Ramaker, the ALJ would likely have arrived at a different conclusion. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (error harmless only where remanding would be a "waste of time").

The ALJ committed two distinct yet related errors in his treatment of Ms. Ramaker's opinion: (1) the ALJ selectively cited hundreds of pages of treatment notes by Ms. Ramaker to find that they supported mild-to-moderate limitations; and (2) did not explain how such findings supported only mild- to-moderate limitations. Thus, remand is appropriate so that the ALJ can fairly evaluate Ms. Ramaker's opinion and assess the full extent of the treatment notes supporting that opinion.

Next, Plaintiff argues that the ALJ's RFC assessment was erroneous. The State agency doctors opined that Plaintiff could relate on a superficial and ongoing basis with co-workers and supervisors. (Tr. 49, 60.) The ALJ held that those opinions were generally persuasive and summarized the superficial limitation. (Tr. 81.) However, the ALJ found that Plaintiff could occasionally interact with supervisors and co-workers. (Tr. 73.) The ALJ opined that this

limitation was based upon Plaintiff's diagnoses and subjective complaints. (Tr. 80.) Plaintiff asserts that the ALJ erred, because the State agency doctors opined that a "superficial" limitation was warranted, while the ALJ included an "occasional" limitation in the RFC.

Plaintiff points out that "occasional" and "superficial" are not the same. "Occasional" describes how much contact an individual can tolerate while "superficial" describes the depth or quality of that contact. Here, the State agency doctors looked at the record and determined that a limitation to superficial interaction with supervisors was warranted. The ALJ found those explanations persuasive, and yet omitted the limitation to superficial contact without explanation. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (ALJs must explain weight given to State agency doctors' opinions); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). This legal error was critical for had the ALJ included this limitation in the hypothetical questions and RFC, the vocational expert may have testified that no work was available for a hypothetical individual with Plaintiff's RFC who was further limited to superficial interactions with supervisors. *Spiva*, 628 F.3d at 353; *Young*, 362 F.3d at 1002-03 ("[t]he RFC falls short because it fails to account for the evidence in the record regarding Young's problems accepting instruction, responding appropriately to criticism from supervisors, thinking independently, and setting realistic goals").

Further, the ALJ noted Plaintiff's reports of panic attacks. (Tr. 74-75.) However, Plaintiff reported panic attacks every other day lasting from 30-to-40 minutes each on average; she would have to go lie in bed, sleep, and was so drained mentally and physically she had trouble doing other tasks later in the day. (Tr. 26.) While the ALJ may have summarized some of this evidence, the ALJ omitted a work-related functional limitation to accommodate such panic attacks. This was error, as the evidence supported such panic attacks that the ALJ did not account for in the

9

RFC. Plaintiff worked for very brief periods of time, with those jobs ending because of panic attacks. (Tr. 25.) She had panic attacks every other day for 30-40 minutes each on average. (Tr. 26.) Trying to leave the house caused her to panic and use the bathroom/have nausea. (Tr. 28.) If she made it into work, after an hour she would feel nauseous and stay in the bathroom; that sickness was related to her anxiety. (Tr. 28-29, 198.) In September 2020, Plaintiff reported severe anxiety all the time, problems leaving her house due to anxiety, and an inability to go to the dentist or to the store; she went to small gas stations and not elsewhere due to panic attacks, which occurred daily and sometimes multiple times per day lasting 15-to-90 minutes. (Tr. 445.) She had a significant panic attack in May 2019 and blacked out. (Tr. 658.) In March 2020 Plaintiff presented to Ms. Ramaker in a panic as she quit her job because of her mental health symptoms; she had a nonstop panic attack before her shift and then had one while at work, and she then quit. (Tr. 810.) Her panic attacks made her tired and left her exhausted for the rest of the day. (Tr. 86.) In September 2020 she reported multiple panic attacks and an inability to go into a store due to overwhelming thoughts. (Tr. 912-13.) She was anxious about her first two-hour shift at Taco Bell. (Tr. 985.) She then reported being very anxious and panicking during that shift. (Tr. 989.) The Taco Bell job did not work out. (Tr. 991.) As noted, abnormal mental status findings aligned with these complaints. Moreover, Plaintiff's reports of panic symptoms—both in duration and in her inability to go into and stay in stores or at work—constitute evidence of her panic attacks. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding where the claimant produced evidence of her alleged limitation in the form of her testimony and medical evidence which the ALJ failed to account for in determining her RFC). The evidence reflected that Plaintiff had trouble going into and staying at work, problems leaving the house on a consistent basis, and

problems going into stores, with those panic attacks occurring approximately daily for around an hour.

The ALJ did not provide an explanation for how this symptom was accounted for in the RFC. While the ALJ found Plaintiff's symptoms were not as severe as alleged, nowhere did the ALJ explain how specific findings were specifically inconsistent with these consistent reports of panic symptoms. *Plessinger*, 900 F.3d at 916 ("The ALJ did not really explain, for example, why he did not believe Plessinger's testimony that he…had to lie down several times during the day to manage his pain"). This error was not harmless for if every workday or every other workday, an individual needed to step away from the workplace for approximately an hour due to panic symptoms and their after-effects (including needing to rest and/or use the bathroom after having a panic attack), they could not sustain employment per VE testimony about off-task time. (Tr. 34.)

The ALJ asked the VE about the maximum off-task time an individual could tolerate. (Tr. 34.) The VE responded that being off-task over 10 percent of the work-day precluded employment. (Tr. 34.) In *Crump v. Saul*, 932 F.3d 567, 570-71 (7th Cir. 2019), the Seventh Circuit remanded where the ALJ "seemed to recognize" the claimant's concentration difficulties with a hypothetical question to the vocational expert about off-task time, but then "failed to incorporate th[e expert's] opinion anywhere in the RFC, leaving the RFC altogether uninformed by considerations of off-task time." The ALJ here did not address off-task time in the decision beyond noting that Plaintiff could work in two-hour segments with normal workday breaks. (Tr. 73, 80.) As in *Crump*, the ALJ erred, for the ALJ found that Plaintiff had moderate concentration deficiencies (Tr. 72); failed to include moderate limitations in concentration,

11

persistence, or pace in the RFC assessment; questioned the VE about off-task time, which the ALJ attributed to Plaintiff's moderate limitations in concentration, persistence, or pace; but then omitted off-task time from the RFC. Thus, remand is required for a proper RFC assessment.

Plaintiff next argues that the ALJ's evaluation of Plaintiff's symptoms is not supported by substantial evidence. The ALJ found that Plaintiff's mental health symptoms were not as severe as alleged. (Tr. 80.) The ALJ noted certain "generally unremarkable" mental status examinations but also remarked upon some abnormal ones as well. (Tr. 80.) The ALJ also noted that "since the claimant's application date, the claimant's overall treatment of her mental impairments was conservative, with no hospitalizations or emergency care. The records showed that the claimant's treatment was with psychotherapy and medications." (Tr. 80.) To the extent that the ALJ acknowledged some normal and abnormal findings, the ALJ failed to identify the import of the absence of particular abnormal objective findings. (Tr. 80.) That is, the ALJ failed to explain how unfavorable findings were of greater evidentiary value than favorable ones. *Reinaas*, 953 F.3d at 467; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence"). The ALJ was not permitted, as a layperson, to reach independent medical conclusions about the significance of this evidence..

Further, while the ALJ was able to rely upon treatment, the ALJ was not permitted to reject Plaintiff's purportedly conservative care without identifying what more aggressive care was available and appropriate, and citing medical evidence to that effect. Here, the ALJ noted that Plaintiff was not hospitalized and did not receive emergency care, but the ALJ failed to explain the significance of this fact. In *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015), the

12

ALJ "went far outside the record when he said that if Voigt were as psychologically afflicted as [a doctor] thought, he 'would need to be institutionalized and/or have frequent inpatient treatment'—a medical conjecture that the [ALJ] was not competent to make." Here, Plaintiff may have been able to care for herself but not able to work, and the ALJ cited no evidence that her allegations could only have been consistent with the record if she was hospitalized. That conclusion was speculative. SSR 86-8. The ALJ also noted that Plaintiff was treated with psychotherapy and medications, but did not explain how this treatment factored into the symptom evaluation. SSR 16-3p requires an ALJ to explain how medication is considered. Here, Plaintiff was prescribed Prozac, Lamictal, and Trazodone. (Tr. 328.) She was also prescribed Vraylar and Rexulti. (Tr. 439, 444, 449.) The ALJ did not explain why consistent use of strong medications did not support that Plaintiff had serious symptoms. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)(willingness to take heavy doses of strong drugs indicates that a claimant's complaints are likely valid).

      The ALJ also summarized Plaintiff's daily activities. (Tr. 73-75.) However, the ALJ never explained how those activities were factored into the symptom evaluation per SSR 16-3p. Despite near unlimited flexibility in doing her daily tasks, the record shows that Plaintiff struggled with them significantly. (Tr. 19-28, 195-203, 214-18.) Work tasks, unlike daily activities, do not allow for such flexibility and instead demand that an individual adhere to a schedule and meet production standards. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (ALJs must recognize difference between daily activities and work demands).

      Additionally, the State agency doctors opined that Plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the

objective medical evidence alone. (Tr. 45, 58.) Despite finding those opinions persuasive (Tr. 81), the ALJ did not discuss this facet of those opinions. SSR 16-3p required the ALJ to consider any expert source opinion of Plaintiff's symptoms. Here, the ALJ did not explain how he reasonably concluded that the evidence did not support Plaintiff's symptoms where the two expert sources whose opinions the ALJ credited found that the objective evidence alone corroborated those symptoms. *Carradine*, 360 F.3d at 756 (an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws). This error was not harmless in this case, for a full adoption of those opinions would have reflected a limitation to superficial interactions with supervisors and co-workers, which would likely have eliminated full-time work. *See* SSR 85-15 (inability to respond appropriately to supervisors and co-workers on a sustained basis eliminates work).

Thus, remand is warranted for a proper evaluation of Plaintiff's symptoms.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: September 26, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court